**Artle BAKER, Appellant,**

v.

**R. E. MARABLE et al., Appellees.**

**No. 5749.**

Court of Civil Appeals of Texas.

El Paso.

Nov. 17, 1965.

Rehearing Denied Dec. 1, 1965.

See also Tex.Civ.App., 373 S.W.2d 377.

W. F. Leigh, Pecos, for appellant.

J. M. Preston, Pecos, for appellees.

CLAYTON, Justice.

Appellant Baker brought suit against appellees to foreclose what he terms a "Mechanic's and Materialman's Lien and a Chattel Mortgage on Realty Lien" on a parcel of real estate in Pecos County, Texas. The parcel of real estate was purchased by one M. G. Singh from Si Stafford on December 11, 1957. The consideration for the transaction included the assumption by Singh of certain indebtedness against the property and the execution of two purchase money notes secured by vendor's lien. Subsequent to the filing of this deed, and on January 1, 1958, Singh purchased a pump and equipment from appellant Baker, to be installed on the land, and gave Baker the liens described above. On January 20, 1959 Singh reconveyed the property to Stafford and as a part of the consideration therefor Stafford canceled the two notes given him by Singh on the original sale of the property. The reconveyance from Singh recited: "* * * this conveyance is made subject to an indebtedness owing to Artie Baker of Pecos, Texas, on a pump situated on the premises, plus certain sums for repair work on said pump". Appellant Baker's position, reduced to its essentials, is that by the ac-acceptance by Stafford of the reconveyance deed from Singh, and the filing thereof, Stafford "expressly subordinated any prior Vendor's Lien or Deed of Trust Lien" Stafford may have had on said land to Baker's asserted liens, thus making the latter superior to Stafford's lien "by express written agreement" and therefore, as superior liens, subject to foreclosure by the suit. The suit, as originally brought, was filed by appellant Baker against appellees Marable and one Harral as transferees from Stafford by warranty deed dated April 15, 1960, the appellees in turn making Stafford a third party defendant. At the conclusion of appellant's testimony the trial court, on appellees' motion, withdrew the cause from the jury and rendered judgment for appellees, finding that "the law and the evidence is conclusive that the Plaintiff, Artie Baker, has only the right of redemption in order to assert his

junior lien against the land, and that he has abandoned such right." The court further, however, upon agreement of the appellees, recognized that appellant's chattel mortgage lien on the pump was a valid and subsisting lien and ordered its foreclosure, but without any personal liability on the part of the appellees for the indebtedness it secured.

Appellant's points of error complain of the action of the trial court in (1) failing to sustain appellant's special exceptions to certain allegations in appellees' pleadings; (2) in granting appellees' motion to withdraw the case from the jury and in rendering judgment for appellees; (3) in holding that appellant had only the right of redemption in order to assert his junior lien against the land and that he had abandoned such right; and (4) in holding that appellant take nothing in his suit to foreclose his mechanic's lien on the land and in removing the cloud cast upon the title to the land by reason of the lien asserted by appellant.

The special exceptions referred to in the first point of error were directed to appellees' allegations that the transaction by which Stafford conveyed the land to Singh by deed retaining a vendor's lien to secure the purchase money notes on which default was made by Singh constituted an executory sale to Singh which could be rescinded by Stafford and was so rescinded by the reconveyance of the land by Singh to Stafford, and that the mechanic's lien asserted by appellant Baker was granted and filed of record subsequent to the execution and recording of the conveyance of the land to Singh and at a time when Baker had actual and constructive knowledge that Stafford had retained the superior legal title to said property to secure the payment of the unpaid portion of the purchase price thereof; and the further allegations that the assertion of the lien by Baker was at a time when Baker had actual and constructive knowledge that the sale to Singh had been rescinded and the land recovered by Stafford and subsequently conveyed to Marable and Harral, and that the assertion of the

lien by Baker constituted a cloud on the title of the said appellees to the land, which should be removed; or alternatively, should the reconveyance not be considered as a rescission, that the vendor's lien retained by Stafford had been duly transferred and assigned to Marable and Harral, to which lien the mechanic's lien asserted by Baker was inferior, and no offer to redeem the land by payment of the indebtedness against it had been made by Baker during the more than five years since the reconveyance of the land to Stafford by Singh. Appellant's special exceptions asserted that the foregoing allegations of appellees were insufficient to constitute a defense to appellant's cause of action or to state a cause of action of the appellees, seeking to remove an alleged cloud upon title.

We affirm the action of the court in refusing to sustain appellant's special exceptions, and overrule appellant's points of error.

■ The original transaction between Stafford and Singh was an executory contract (58 Tex.Jur.2d 320–323, § 119) which could be rescinded by agreement of the parties. Whiteside v. Bell, 162 Tex. 411, 347 S.W.2d 568, 570 (S.Ct., 1961):

"The courts of our state have long been committed to the proposition that a deed conveying land and reserving a lien for the unpaid purchase money is treated as an executory contract that will ripen into a title in the purchaser when he has performed his obligation to pay the purchase money. It is accordingly held that when the vendee refuses to pay the vendor may claim an immediate rescission and recover the land * * *

"Where the vendee defaults in the payment of the purchase price there are several remedies available to the vendor. He may file a suit for debt and foreclosure. He may file a suit in trespass to try title to recover the land

thereby effecting a rescission. Rescission may be accomplished by agreement between the parties * * * "

The deeds between Stafford and Singh are a part of the record in this case and demonstrate that the executory contract between the parties was rescinded in the manner approved by the Supreme Court in the cited case.

As to the other special exceptions advanced by appellant, we consider that the holding of the trial court is supported by the various authorities cited to us by appellees in their brief. As for example, the ruling of the Commission of Appeals on certified questions in the case of North Texas Building & Loan Ass'n v. Overton, 126 Tex. 104, 86 S.W.2d 738 (1935) seems peculiarly applicable to the facts before us in the instant case. At pages 740, 741 of the cited case, the court stated:

"When a mortgagor conveys the mortgaged premises to the mortgagee in consideration of the cancellation or payment of the note for which the mortgage was given as security, the question of whether a merger of the two estates will result is determined by this test: Would it be more just to declare a merger or to keep the two estates separate? Whenever, by reason of the existence of a junior incumbrance, it is to the interest of the mortgagee to keep the estates separate, they will not be regarded as merged. It has been many times stated that the intention of the mortgagee is the determining factor. In this state that rule, in its literal meaning is inaccurate, for it is presumed, as a matter of law, that he intended to keep the estates separate, if that course is essential to maintain his priority over a junior incumbrancer. Silliman v. Gammage, 55 Tex. 365; Browne v. King, 111 Tex. 330, 235 S.W. 522; R. B. Spencer & Co. v. May (Tex.Civ.

App.) 78 S.W.2d 665 (writ ref.). It is immaterial, as between the senior and junior lienholders, whether the mortgagee retains the note and mortgage in his possession or surrenders them to the mortgagor. It is likewise immaterial whether or not the deed of conveyance from the mortgagor to the mortgagee recites, as did the one in the instant case, that the cancellation of the note and mortgage was a part of the consideration for the conveyance.

"It is often true, as no doubt it was in the instant case, that it is decidedly to the advantage of the mortgagor and mortgagee to avoid the necessity of a foreclosure suit by a conveyance of the premises to the mortgagee. A rule penalizing them for so doing would be contrary to our policy that litigation is not to be encouraged. The junior lienholder suffers no injury thereby, but is in the same position as if there had been a foreclosure without his having been made a party. His equity of redemption is not affected, neither is his lien thereby elevated to a first lien."

In further support of appellees' position herein they cite the holding in R. B. Spencer & Co. v. May, 78 S.W.2d 665 (Tex.Civ. App., 1935, ref.), which opinion states at pages 666, 667:

"Upon the trial of the case it was insisted by the appellant, who was plaintiff below, that when Daniel E. and George W. May reconveyed the land to Terry in consideration of the cancellation and surrender of the vendor's lien notes held by him, there was a merger of the vendor's lien with the superior title to the property, so as to extinguish the vendor's lien, and as a consequence appellant's mechanic's lien became a first lien on the 57½ acres of land described in its contract, and it is here insisted that the trial court erred in failing to so recognize said lien and

to foreclose the same on said land. On the other hand, the appellee, Terry, insists that he at all times held the superior title to the property, and that his interests could not have been defeated by Daniel E. and George W. May without a tender of the unpaid purchase money due him, and since appellant acquired its interest from Daniel E. May, it held no greater right than he did, and could not defeat appellee's title without a tender of the unpaid purchase money.

"We recognize the rule that in some instances when the title to land and the title to a mortgage lien thereon become vested in the same person the greater and the lesser estates may become merged and the lien extinguished, in the absence of an intention to the contrary. 17 Tex.Jur. 120; York v. Robbins (Tex.Com.App.) 255 S.W. 720; Silliman v. Gammage, 55 Tex. 365; Smith v. Cooley, Tex.Civ.App., 164 S.W. 1050. Such rule is based on a fiction to which resort may be had when necessary in order to do complete justice between the parties; but resort should not be had thereto when the application of such principles would result in the creation of rights or obligations not contemplated by the parties nor justified by any consideration. 17 Tex.Jur. 125. In our opinion, such rule does not apply in a case like the one here under consideration, as where the holder of the vendor's lien and the superior title, in order to avoid the necessity of foreclosure proceedings against the debtor who is unable to pay, accepts from such debtor a reconveyance of the title to the property in cancellation of the unpaid purchase money. In Texas, as is well known, a grantor who retains an express lien to secure unpaid purchase-money notes holds the superior title to the property. Upon the failure of the purchaser to pay the unpaid purchase money the vendor may resume title and possession of the property or maintain an action in trespass to try title therefor. In the event of an attempt to exercise such right by the vendor, the vendee's only remedy is to tender the unpaid purchase money and perform such other obligations as have been assumed by him under his contract of purchase. Yett v. Houston Farms Development Co. (Tex.Civ.App.) 41 S.W. 2d 305, par. 2 (writ refused) and cases there cited; Thompson v. Robinson, 93 Tex. 165, 54 S.W. 243, 77 Am.St. Rep. 843; Scott & Carmody v. Canon (Tex.Com.App.) 240 S.W. 304. Therefore, when George W. May and Daniel E. May failed to pay the balance of the purchase price at its maturity, Terry, the vendor, as against such purchasers, had a right to rescind the contract and resume title and possession of the property. R. B. Spencer & Co. acquired its right through Daniel E. May with notice of Terry's superior claim. Consequently, appellant's rights were necessarily subject to the same limitations as were the rights of its grantor Daniel E. May. Bankers' Mortgage Co. v. Higgins (Tex.Civ.App.) 4 S.W. 2d 102, par. 6; Teston v. Brannin (Tex.Civ.App.) 261 S.W. 788, par. 9. Hence appellant's only remedy to defeat a rescission of the executory contract by Terry was to tender the balance of the unpaid purchase money."

■ With regard to appellant's complaint in his third point of error that the trial court had erred in finding that appellant had only the right of redemption in order to assert his junior lien against the land and that he had abandoned such right, it must be borne in mind that the reconveyance of the land from Singh to Stafford occurred on January 20, 1959. The trial of the case began on September 17, 1964. During cross-examination of appellant in the trial the appellant was asked about a conversation between him and Stafford which occurred at about the time when

Stafford accepted the reconveyance of the land from Singh. Appellant's testimony follows:

"Q  Now, when he first talk___ to you and told you he had to take the land back, did you offer to pay to him the indebtedness owing to him by Singh that was secured by his liens?

"A  No, sir.

"Q  Have you ever offered to pay that indebtedness?

"A  The indebtedness to—

"Q  Stafford that was secured by these liens?

"A  No, sir.

"Q  As a matter of fact, you never would be willing to, would you?

"A  I don't think I would, unless they found oil out there."

When the case of North Texas Building & Loan Ass'n v. Overton was back before the Court of Civil Appeals, 91 S.W.2d 429, 431, after the Commission of Appeals ruling on certified questions (86 S.W.2d 738, supra), the Court of Civil Appeals held:

"While, as stated, Dr. Overton still had the equity of redemption, his failure to insist upon it and to make a tender of the prior indebtedness is sufficient to show an abandonment of the right.  29 Tex.Jur. 1007, § 162;  41 D.C. 942, § 1376  *  *  *"

We apply the same ruling to the case at hand and approve the holding of the trial court in this respect.

We consider that all appellant's points of error have been sufficiently dealt with, and as previously stated, they are overruled and the judgment of the trial court is hereby in all things affirmed.