**Annie O. FLEMING et vir, Appellants,**

**v.**

**S. N. ADAMS et al., Appellees.**

**No. 14579.**

Court of Civil Appeals of Texas.

Houston.

June 10, 1965.

Rehearing Denied July 8, 1965.

Raymond H. Wilson, Houston, for appellants.

Carl & Lee, Emory T. Carl, Ben L. Adams, Jr., Houston, for appellees.

COLEMAN, Justice.

Appellants have brought this action for a declaratory judgment, requesting declaration and judgment by the court that a tract of land owned by them is free and clear of all restrictions as to the purpose for which it may be used and the character of buildings which may be constructed thereon. Appellees were named defendants as owners of lots in an adjacent restricted subdivision, and as owners representative of the whole class of owners of lots in such subdivision. Also named as defendants were the owners of tracts of land out of the larger tract from which appellants' land was conveyed. After trial to the court without a jury a judgment was entered that appellants' land was subject to the same restrictions binding the lots or tracts of land owned by the defendants.

S. N. Adams was the owner of a 44.38 acre tract of land out of Lots 5 and 6 of the Morse Subdivision of the western portion of the A. C. Reynolds Survey in Harris County, Texas. On September 27, 1949 he filed for record in Harris County a subdivision plat of 40.3096 acres of said land as Oak Estates. The remainder of the tract is shown on the map of Oak Estates as a single tract and is designated "Owned by others", although at the time the plat was filed it was owned by Adams. Another portion of the land was not divided into lots on the plat and was labeled "Unrestricted". It has been developed into a regional shopping center. Certain easements dedicated by the plat extended through the "Owned by others" tract.

On October 24, 1949, S. N. Adams executed an instrument, which was filed in the Deed Records of Harris County, whereby he adopted certain covenants, conditions, easements and restrictions applicable only to the platted lots in Oak Estates Subdivision. Thereafter Adams sold many of the lots in Oak Estates and represented to the purchasers that all of the lots, together with the 4 acre tract adjoining the subdivision, were highly restricted and could be used for single family residences only. Appellants had no actual knowledge of these representations prior to the purchase of the property in question.

Early in the year 1950 Adams began the construction of a residence on the land in question, which is a tract of land approximately 110' by 188' off of the north end of the tract designated "Owned by others" on the plat of Oak Estates. As security for a loan he executed a deed of trust, filed for record May 3, 1950, conveying the property in question to a trustee. The deed of trust contained the following covenants and restrictions:

"It is understood that the above described real property herein conveyed in trust is hereby subjected to each and all of the restrictions set out and contained in an instrument executed by

S. N. Adams on the 25th day of October, 1949, and filed for Record under File No. 675789 in the office of the County Clerk of Harris County, Texas, said instrument having created restrictions against the lots and blocks comprising Oak Estates Addition, and the same restrictions therein contained, insofar as said restrictions are reasonably applicable to the above described property, are hereby imposed thereon.

"In addition to the above restrictions, the property above described and hereby conveyed in trust, is hereby subjected to the additional restriction that no house erected thereon shall have less than Two Thousand (2000.00) square feet of livable floor space area, and no building site shall be less than Ninety (90′) feet in width facing on Drexel Drive.

"The restrictions herein imposed upon the above described property shall exist against the same for the same length of time and under the same conditions as set out in said above mentioned instrument recorded in the County Clerk's office of Harris County, Texas under File No. 675789."

The debt secured by the deed of trust was subsequently paid and a release of the deed of trust lien dated November 28, 1950, was filed for record on December 29, 1950 at 11:30 a. m. On November 23, 1950, Adams sold the property in question to Curtis K. Canter by deed filed for record on December 29, 1950 at 11:30 a. m. The deed contained this recitation:

"This conveyance is made and accepted subject to any and all restrictions and easements affecting the use of the premises conveyed herein, now of record in the County Clerk's office in said County."

Canter and wife subsequently conveyed the property to Freidkin by a deed reciting:

"The conveyance evidenced by this deed is made subject to any and all easements, restrictions, covenants, conditions, and reservations of record, if any, applicable to the herein conveyed property, or any part thereof."

Freidkin conveyed to Mrs. Fleming, appellant, by deed dated August 29, 1957, "made and accepted subject to

"Any and all existing and valid restrictions and easements now shown of record in the County Clerk's office of Harris County, Texas."

At the time of the purchase of this property neither Mrs. Fleming nor her husband, Harvey T. Fleming, who represented her in the transaction, had any actual knowledge of the existence or contents of the deed of trust. However, all but one of the building sites out of the 4 acre tract and most of the lots in Oak Estates Subdivision were improved with single family residences. The Flemings moved into the residence located on the property in question.

On February 7, 1951, Adams conveyed a building site out of the 4 acre tract to Roy C. Super, and on February 15, 1951, another to Georgia Super Sutherland. Both conveyances contained recitations subjecting the property conveyed to restrictions, the recitations being identical to those contained in the deed of trust.

By an instrument dated February 7, 1951 and filed for record August 9, 1951, referring to the Plat of Oak Estates and the instrument imposing restrictive covenants on the lots therein, Adams subjected all of the 4 acre tract shown on the Plat as "Owned by others", except that previously conveyed to Canter, which was specifically described, to the covenants and restrictions imposed on the lots in Oak Estates Subdivision, "insofar as the same are reasonably applicable to the S. N. Adams tract of land." There were also provisions requiring that each home site deeded out of the tract be not less than 90′ feet in width and face on Drexel Drive and that no house could be erected on such sites with a livable area of less than 2000 square feet. It was

provided that the restrictions would exist for the same length of time and under the same conditions as set out in the restrictions instrument filed in connection with Oak Estates Subdivision.

Thereafter Adams conveyed as building sites all the remaining land in the "Owned by others" tract. Some deeds contained appropriate references to the February 7, 1951 instrument imposing restrictions; others excepted easements and restrictive covenants from the warranty or made no reference to restrictive covenants.

Prior to the date on which the conveyance was made to Canter or the restrictions were imposed on the 4 acre tract, Adams had sold all of the lots in Oak Estates Subdivision to a corporation, in which he and members of his family were the only substantial stockholders. Deeds to building sites in the 4 acre tract were executed by Adams individually, while deeds to the lots in Oak Estates were executed by Adams as president of the corporation. Adams subsequently acquired, and owned at the time of the trial, some of the lots in Oak Estates. He owned no land in the 4 acre tract at the time of trial.

The property of plaintiffs faces 115 feet on Drexel Drive and is bounded along its North line by San Felipe Road, which is a heavily traveled street in the City of Houston. The property of plaintiffs is bounded on its east line by a tract of land on which is located a restaurant and private club known as The Confederate House, which is a commercial use. To the east of said The Confederate House tract, and fronting north on the south side of San Felipe Road, for the full remainder of the block, are other commercial establishments. Neither The Confederate House tract nor the commercial establishment tracts lying east thereof constitute any part of the 44.38 acres of land out of Lots 5 and 6 of the Morse Subdivision of the western portion of the A. C. Reynolds Survey in Harris County, Texas, and hereinabove described as owned by S. N. Adams of September 27, 1949.

The trial court made findings of fact, including substantially all of the facts set out in the foregoing statement and made the following conclusions of law:

"1. S. N. Adams adopted a general scheme or plan for the development and use of the entire 44.38 acre tract of land owned by him.

"2. The general scheme or plan of the said S. N. Adams is evidenced by the execution by said S. N. Adams of the plat of Oak Estates, which is recorded Volume 31, page 67, Map Records of Harris County, Texas; the execution of the instrument dated October 24, 1949, recorded Volume 1992, page 581, Deed Records of Harris County, Texas, adopting covenants, conditions, stipulations, easements and restrictions covering lots in Oak Estates; the execution of the Deed of Trust dated April 28, 1950, filed for record May 3, 1950, and record Volume 1680, page 603, Deed of Trust Records of Harris County, Texas; the execution by S. N. Adams of deed to Roy C. Super dated February 7, 1951, recorded Volume 2238, page 414, Deed Records of Harris County, Texas; the execution by S. N. Adams to Georgia Super Sutherland of a deed dated February 15, 1951, recorded Volume 2243, page 88, Harris County Deed Records; the execution of the instrument by S. N. Adams dated February 7, 1951, recorded Volume 2318, page 625, Deed Records of Harris County, Texas, subjecting the land therein described to restrictions and covenants therein set forth.

"3. The plaintiffs had constructive notice of the deed of trust executed by S. N. Adams dated April 28, 1950, recorded Volume 1680, page 603, Deed of Trust Records of Harris County, Texas.

"4. All of the covenants and restrictions set forth in the instruments above referred to constitute covenants run-

ning with the land for the benefit of all owners of lots in Oak Estates, and also for the benefit of all owners of building sites out of the tract designated on the map of Oak Estates as 'Owned By Others', and all owners of any of said lots or building sites are entitled to enforce all of said covenants."

The particular property involved in this controversy is not burdened with restrictive covenants running with the land, at law, unless the provisions of the deed of trust effectively created them. We are of the opinion that the covenants placed therein do not run with the land at law. It is essential to the creation of such an easement that there be a dominant estate and a servient estate in tracts of land owned separately by two or more individuals. Texas courts have adopted the view that restrictions upon the use of land are easements or equitable servitudes upon the land and constitute interests in land. Such easements must be created by an instrument in writing satisfying the Statute of Frauds. Miller v. Babb, Tex.Com.App., 263 S.W. 253; Davis v. Skipper, Tex.Com.App., 125 Tex. 364, 83 S.W.2d 318; Panhandle & S. F. Ry. Co. v. Wiggins, Tex.Civ.App., 161 S.W. 2d 501, error ref.; 21 Tex.Jur.2d Easements, p. 125.

In this jurisdiction a mortgage or a deed of trust does not convey title to land. While the deed of trust involved here was given by the owner of a tract of land on a part of it only, the covenants (whether considered as servitudes or negative easements) expressed therein, affecting the part of the land mortgaged for the benefit of the remainder of the land, are not easements prior to a sale under the power given to the trustee because prior to that time there is no separation of title, no dominant and servient estates. Wylie v. Hays, Tex.Sup., 114 Tex. 46, 263 S.W. 563; Knox v. Brown, Tex.Com. App., 16 S.W.2d 262; Kling v. Ghilarducci, Ill.Sup., 3 Ill.2d 454, 121 N.E.2d 752, 46 A.L.R.2d 1189; Williams, Restrictions on the Use of Land; "Covenants Running with The Land at Law", 27 T.L.R. 419.

The fact that the deed of trust was recorded in the Mortgage Records of Harris County, Texas, therefore, would not be constructive notice of the existence of restrictive easements on this land since the lien of the deed of trust was released and the release was properly recorded. Since the title of appellants is not derived from the deed of trust, there was nothing shown of record which imputed to them notice of any *valid* and *existing* restrictive covenants affecting their land. Brown v. Ackerman, Tex.Com.App., 17 S.W.2d 771.

In the leading case of Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270, the rule of law upon which the trial court predicated its judgment was enunciated as follows:

"So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restrictions to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the convenant was part of the subject-matter of his purchase. DeGray v. Monmouth Beach Club House Co., 50 N.J.Eq. 329, 24

Atl. 388; Hano v. Bigelow, 155 Mass. 341, 29 N.E. 628."

■ In Monk v. Danna, Tex.Civ.App., 110 S.W.2d 84, writ dism., the court emphasized that before one can be charged with the burden of restrictive covenants pursuant to a general plan or scheme, he must have purchased with knowledge, either actual or constructive, of the plan. This rule has been noticed by this Court in many cases. Wilson Co. v. Gordon, Tex.Civ.App., 224 S.W. 703, writ dism.; Gordon v. Hoencke, Tex.Civ.App., 253 S.W. 629; Klein v. Palmer, Tex.Civ.App., 151 S.W.2d 652; Braswell v. Woods, 199 S.W.2d 253, ref., n. r. e.; Alexander Schroeder Lumber Co. v. Corona, Tex.Civ.App., 288 S.W.2d 829, ref., n. r. e.

In the case last cited it was emphasized that where the land in controversy was not owned by the common grantor at the inception of the general scheme, but nevertheless was included within general plan at that time, and all the land to be included in the scheme was clearly defined by the common grantor, and the purchasers had notice of the existence of a building scheme embracing the lands they were purchasing, the restrictions could be enforced against the subsequent purchaser.

The necessity for a proper description of property to be affected by restrictive covenants is illustrated by the case of Davis v. Congreation Shearith Israel, Tex.Civ.App., 283 S.W.2d 810, ref., n. r. e., holding that, where the common grantor, in connection with the sale of certain land subject to restrictions, agreed that similar restrictions be placed on "other surrounding property" owned by him, the agreement was "too general, indefinite and inexact to constitute a sufficient real estate description to impose restrictions, or to constitute constructive notice * * * of restrictions * * *."

The trial court found that appellants had no actual knowledge or information concerning the representations by S. N. Adams to purchasers of lots in Oak Estates

prior to or at the time of the purchase of the property involved in this litigation. The plat of Oak Estates filed for record showed the tract of land from which appellants' lot was severed as "Owned by others". The instrument imposing restrictions on Oak Estates specified the lots to which these restrictions applied, and, thereby, specifically excluded the tract "Owned by others". It is clear, therefore, that from the record evidence the land "Owned by others" was not included in the general plan from its inception. Appellees offered evidence that Adams represented to the purchasers of Oak Estates lots that the restrictions would be imposed on the "Owned by others" land. Since appellants' lot was not included in the plat of the subdivision, or mentioned in the dedicatory instrument, appellants cannot be charged with constructive notice of a general plan or scheme of development applicable to the land they purchased.

■ Since this lot is not within a platted subdivision, and was excluded from the subsequently filed instrument imposing restrictions on the "Owned by others" tract, and since this was the first lot conveyed out of the "Owned by others" tract, the fact that all of the other lots conveyed out of this tract were subjected to uniform restrictions would not be constructive notice of development under a plan or scheme. Appellants were entitled to rely on the information which a search of the records and the instruments referred to therein would have revealed. Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319; Chandler v. Darwin, Tex.Civ.App., 281 S.W.2d 363; Spencer v. Maverick, Tex.Civ.App., 146 S.W.2d 819; Wilkerson v. Ward, Tex.Civ.App., 137 S.W. 158, writ ref.

If appellants had constructive notice of the recorded deed of trust and of the covenants therein, a search of the records would have revealed that the deed of trust was released and that no title was conveyed thereby. There is nothing in the deed of trust to indicate that the restrictions set out therein were imposed for the benefit of

purchasers of tracts out of the "Owned by others" land. Nor does the deed of trust purport to extend the general plan to include the entire "Owned by others" tract. No uniform plan of development including the land in question and other similarly situated land owned by the grantor was initiated by the deed of trust. Its recordation could not be constructive notice of such a plan.

The judgment of the trial court is reversed and judgment is here rendered that appellants' title to the tract of land in question is free and clear of and not subject to or burdened by covenants, easements, or restrictions as to the use thereof.